**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSLYN DALLAS | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 24-1882 |
| THOMAS ASSENMACHER *ET AL.* | : | |

<u>**MEMORANDUM AND ORDER**</u>

**AND NOW**, this <u> 23rd </u> day of <u> February</u>, 2026, upon consideration of Defendants' Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) Seeking Dismissal of Counts IV, V, VI, VII, VIII, IX, X and XI of Plaintiff's Complaint (ECF No. 14) and all documents submitted in support thereof and in opposition thereto, it is **ORDERED** that the Defendants' Motion for Judgment on the Pleadings is **GRANTED** as follows:

1. **Background**

Plaintiff Joslyn Dallas ("Dallas" or "Plaintiff") brings claims under 42 U.S.C. § 1983 ("Section 1983") for excessive force, conspiracy to commit excessive force, and false arrest, as well as common law assault and battery claims, against each of Officer Thomas Assenmacher ("Assenmacher"), Officer Michael Sylvester ("Sylvester"), and Sergeant Brandon Maxwell ("Maxwell") (together, the "Defendant Officers") of the Southeastern Pennsylvania Transportation Authority Police Department.  The claims arise from an incident that took place on May 11, 2022, when Assenmacher and Sylvester forcibly removed Dallas from a city bus for failing to pay the full fare and Maxwell subsequently tased Dallas after she continued to resist and/or flee the officers.  These events allegedly resulted in physical and psychological trauma to Dallas.  Plaintiff also brings a Section 1983 *Monell* claim against the Southeastern Pennsylvania Transportation Authority ("SEPTA"), alleging that SEPTA "developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of individuals during the course of

arrests, including the policy regarding use of force and policy regarding passengers who do not pay the full fare." (Complaint, ECF No. 1, at ¶ 60.)  Defendants have moved for judgment on the pleadings as to Dallas's conspiracy, false arrest, assault and battery, and *Monell* claims.  Plaintiff does not oppose dismissal of the assault and battery claims, but she argues that all other claims should be allowed to proceed to discovery.

Federal Rule of Civil Procedure 12(c) permits a party to make a motion for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).  Courts review a motion for judgment on the pleadings "under the same standards that apply to a Rule 12(b)(6) motion."  *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)).  To assess a Rule 12(b)(6) motion to dismiss for failure to state a claim, courts conduct a two-part analysis:  First, the court separates the factual and the legal elements of a claim.  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

At issue is Defendants' motion for judgment on the pleadings as to Plaintiff's conspiracy, false arrest, and *Monell* claims.

### 2.  The Defendant Officers

The Defendant Officers have moved for judgment on the pleadings as to the conspiracy, false arrest, and assault and battery claims against them.  As mentioned, Plaintiff does not oppose dismissal of the assault and battery claims in Counts VIII, IX, and X.

To prove conspiracy under Section 1983, a plaintiff must establish: (1) the existence of a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for the consequences; (2) that the purpose of the plan was to violate a constitutional right of the plaintiff; and (3) that an overt act resulted in the actual deprivation of the plaintiff's constitutional rights. *Kelleher v. City of Reading*, No. 01-3386, 2002 WL 1067442, at *7 (E.D. Pa. May 29, 2002). Defendants assert that "[t]he Complaint is wholly devoid of any factual basis regarding when, how or why the Defendant Officers formed 'a single plan' 'to violate the constitutional rights of the plaintiff.'" (Def. Mem., ECF No. 14-1, at 6 (quoting *Kelleher*, 2002 WL 1067442, at *7).) In response, Plaintiff argues that Maxwell told Assenmacher and Sylvester to let go of Dallas so that he could tase her, demonstrating that the three were working together to subject Plaintiff to excessive force. (Pl. Opp'n Mem., ECF No. 16, at 6.) We find that this interaction on its own fails to substantiate a conspiracy allegation. "To prove the existence of a conspiracy, plaintiff must plead that there was 'an agreement, understanding, or "meeting of the minds" to violate the plaintiff's rights.'" *Miller v. Goggin*, 672 F. Supp. 3d 14, 53 (E.D. Pa. 2023) (quoting *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009)). Here, the alleged fact that two officers obeyed a command given by a sergeant during a violent altercation, without more, does not amount to a sufficient showing of an agreement or understanding among conspirators to substantiate a plausible conspiracy. The motion to dismiss Count IV is granted.

A claim for false arrest under Section 1983 requires a plaintiff to demonstrate that the police lacked probable cause to arrest the plaintiff. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State*

*Police*, 71 F.3d 480, 483 (3d Cir. 1995). Although probable cause is usually a question of fact for the jury, a court may conclude "'that probable cause did exist as a matter of law if the evidence, viewed most favorably to the Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly." *Est. of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir.1997)). Here, Defendants assert that Plaintiff's own summary of the facts clearly shows that probable cause existed to arrest her for the crime of defiant trespass. (Def. Mem. at 8–9.) Plaintiff responds that the fact that the Office of the District Attorney of Philadelphia ultimately declined to charge her with defiant trespass demonstrates that reasonable minds could differ on the issue. (Pl. Opp'n Mem. at 7.) According to Plaintiff, she was falsely arrested because the Defendant Officers did not have probable cause to arrest her for either of the crimes with which she *was* charged[1]: simple trespass and resisting arrest. (*Id.* at 7–8.)

Plaintiff's arguments are unavailing on this issue. It is well established that "the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [a prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *see also Fullman v. City of Philadelphia*, No. 22-4282, 2023 WL 6881040 (E.D. Pa. Oct. 17, 2023) (quoting *Bordenkircher* in support of the Philadelphia district attorney's discretion not to prosecute), *aff'd but criticized on other grounds*, No. 23-3073, 2024 WL 1637550 (3d Cir. Apr. 16, 2024). Accordingly, the fact that a prosecutor chose not to charge Plaintiff with defiant trespass has no bearing on whether probable cause existed to arrest her for that crime. *See Egolf v. Witmer*, 421 F. Supp. 2d 858, 867 (E.D. Pa. 2006) (concluding that "the District Attorney's subjective view about the advisability of prosecution does not impugn the Troopers' correct determination that they had probable cause to

---

[1] All charges against Plaintiff were dismissed on July 22, 2022. (Complaint at ¶ 21; Def. Mem. at 3.)

arrest Plaintiffs"), *aff'd*, 526 F.3d 104 (3d Cir. 2008).  In addition, "[p]robable cause need only exist as to any offense that could be charged under the circumstances," *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994), so whether probable cause existed to suspect Plaintiff of simple trespass and resisting arrest is irrelevant if probable cause is established as to the offense of defiant trespass.  *See also Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 303 (3d Cir. 2024) (affirming that the "any-crime rule" applies to false arrest claims).  This leaves us with the ultimate question of whether the facts observed by the Defendant Officers at the time of the arrest would have warranted a reasonable person to believe that Plaintiff was committing defiant trespass. *See Orsatti,* 71 F.3d at 483, *supra*.

Under Pennsylvania law, a person commits defiant trespass "if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by . . . actual communication to the actor."  18 Pa. Cons. Stat. Ann. § 3503(b)(1)(i). Repeated requests by a property owner or other authorized individual that an actor leave a place constitutes the "notice against trespass" required by the statute.  *See Com. v. Downing*, 511 A.2d 792, 793–94 (Pa. 1986) (actor guilty of defiant trespass where he was asked repeatedly to leave law library by professor and campus security); *Commonwealth v. Bettis*, 347 A.3d 779, 787–88 (Pa. Super. 2025) ("Appellant may have thought that he had a right to be on the property, but once he was told that he could not remain . . . any right to remain clearly ceased."); *Feldman v. Cmty. Coll. of Allegheny*, 85 F. App'x 821, 825–26 (3d Cir. 2004) (affirming District Court's grant of summary judgment for defendants on Section 1983 false arrest claim, finding "that there was ample probable cause to arrest this defiant trespasser who refused to obey repeated requests by the owner's agents to leave").  In her complaint, Plaintiff acknowledges that she "paid a portion of the fare, but [did] not pay the full fare and took a seat on the bus." (Compl., ECF No. 1, ¶ 7.)  Plaintiff

also states that she "was approached by defendant Assenmacher, who told Plaintiff that she had to exit the bus" and that she continued to remain seated on the bus after the officer informed her that she must leave.  (Compl. ¶ 8–10.)  Given that the Plaintiff acknowledges that she was repeatedly told by officers to leave the bus yet chose to remain, a jury could not reasonably find that probable cause did not exist to arrest Plaintiff for defiant trespass.  Plaintiff therefore cannot plead false arrest, and the motion to dismiss Counts V, VI, and VII is granted.

Accordingly, it is **ORDERED** that Counts IV, V, VI, VII, VIII, IX, and X are **DISMISSED** with prejudice.

### 3.  *Monell* Claim

We last address Plaintiff's *Monell* claim, which seeks to hold SEPTA liable under Section 1983 for the Defendant Officers' alleged use of excessive force.[2]

A municipality[3] may be found liable under Section 1983 if "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 400 (1997) (emphasis omitted) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).  The Third Circuit has explained that a *Monell* claim for municipal liability may proceed in two ways: a plaintiff may plead that an unconstitutional policy or custom of the municipality led to the plaintiff's injury, or, alternately, that the injury was caused by some deficiency—such as a failure to train, to supervise, or to discipline—reflecting a deliberate choice by the municipality. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  A plaintiff pursuing a policy theory "must point to an

---

[2] Although this Memorandum and Order dismisses all other constitutional claims against the Defendant Officers, the Defendants did not move for dismissal of Plaintiff's excessive force claims (Counts I–III).

[3] "For the purposes of § 1983, SEPTA is treated as a municipal agency when determining its liability, if any." *Brown v. SEPTA*, 539 F. App'x 25, 27 (3d Cir. 2013) (citing precedent).

official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject." *Id.* "[I]f alleging a custom, the plaintiff must evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Id.* at 105–06. If alleging a municipal failure, the plaintiff must show "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Id.* at 106.

Defendants argue that Count XI must be dismissed because Plaintiff "has failed to plead any facts" demonstrating the existence of a policy, custom, or pattern of failures indicating deliberate indifference. (Def. Mem. at 14–15.) Instead, Defendants assert, the Complaint consists of "threadbare recitals of some of the elements of such an action." (*Id.* at 15.) Defendants note that "[s]imply paraphrasing § 1983 does not meet Rule 8's pleading requirements because it fails to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability." (Def. Repl., ECF No. 17, 5 (quoting *Wood v. Williams*, 568 Fed. Appx. 100, 104 (3d. Cir. 2014)).) Plaintiff, in response, argues that the Complaint specifically points to SEPTA's use-of-force and passenger-nonpayment policies, as well as SEPTA's alleged deliberate indifference to the proper training and supervision of officers, as encouraging the use of excessive force and thereby causing Plaintiff's injury. (Pl. Opp'n Mem. at 8–9.) According to Plaintiff, "allegations like those outlined above - made before a plaintiff has the opportunity to engage in discovery – are more than sufficient to assert a plausible *Monell* claim and withstand a motion to dismiss." (*Id.* at 9.) Plaintiff cites five cases decided by this Court over the past two decades that demonstrate a willingness to allow *Monell* claims to proceed on generalized allegations given the difficulty of gathering details of municipal inner workings prior to discovery. (*Id.* at 9–11 (citing, among others, *Keahey v. Bethel Twp., Pa.*, No. 11-7210, 2012 WL 478936 (E.D. Pa. Feb. 15, 2012) (denying motion to dismiss *Monell* claim, noting that plaintiff could not prove a pattern of constitutional

violations "without a sufficient period of discovery to adduce this evidence," and accordingly finding that "the issue of whether the Township maintained a policy that failed to properly train its police officers is still too premature for the Court to decide at this time") and *Est. of Arrington v. Michael*, No. 11-4534, 2012 WL 398765 (E.D. Pa. Feb. 8, 2012) ("The factual support for the allegations is thin but not altogether unusual for a case in its infancy.")).)

The question before us is whether Plaintiff's Complaint, which asserts (i) the existence of unconstitutional policies and/or customs at SEPTA and (ii) that SEPTA failed to adequately train, supervise, and discipline its police officers, while providing virtually no facts supporting either of those assertions, is "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *See Fowler*, 578 F.3d. at 211 (quoting *Iqbal*, 556 U.S. at 679). We find that, in its current form, it is not. Although it is true that this Court has acknowledged the difficulties facing plaintiffs in gathering facts relevant to a claim for municipal liability prior to discovery, *see, e.g.*, *3909 Realty LLC v. City of Philadelphia*, No. 21-0030, 2021 WL 2342929, at *4 (E.D. Pa. June 8, 2021) ("[T]he Court notes that *Monell* liability is generally not amenable to resolution at the pleading stage, as it requires a plaintiff to plead facts outside his or her personal knowledge."), previous cases also instruct that a plaintiff must provide *some* factual basis for her allegations, aside from mere conclusory statements, in order to plead a claim, *see, e.g.*, *Godson v. City of Philadelphia*, No. 24-6461, 2025 WL 757101, at *9–10 (E.D. Pa. Mar. 10, 2025) (dismissing *Monell* claim for excessive force against the city, noting that, although the plaintiff asserted that the city had condoned a custom of excessive force against prisoners, "[plaintiff] does not specify any underlying facts that affect [plaintiff's] claims of a policy or custom by the City that sanctioned this conduct"). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The plausibility standard is not akin to a 'probability

8

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Recently, the Third Circuit rejected a plaintiff's argument on appeal that her Section 1983 claim, which sought municipal liability for a prison suicide based in part on a failure-to-train theory, should not have been dismissed because it would be impossible to plead the facts necessary to substantiate her claim without discovery. *See Beers v. Cnty. of Northumberland*, No. 23-2555, 2024 WL 2874283, at *2 (3d Cir. June 7, 2024). Quoting the seminal *Iqbal* case, the court explained that even a civil rights plaintiff must provide the court with sufficient factual content from which to draw a reasonable inference that a defendant is liable. *Id.* Ultimately, the Court of Appeals affirmed the District Court's holding that the plaintiff "failed to allege enough facts to connect the dots and thus was not entitled to additional discovery." *Id.*

Here, the only fact pointed to by Plaintiff in support of her assertions of an existing policy, custom, and/or failure to train, supervise, and discipline, is Sergeant Maxwell's conduct upon arriving at the scene of Plaintiff's arrest. Because Maxwell was a supervising officer, Plaintiff argues, his failure to diffuse the situation, and in fact his "escalat[ion of] the situation by introducing a taser," shows that excessive force is encouraged among SEPTA police officers. (Pl. Opp'n Mem. at 9.) However, despite Maxwell's supervisory role, Plaintiff does not allege that Maxwell was a final policymaker, and therefore the sergeant's actions, regardless of their appropriateness, were not indicative of a municipal policy. Additionally, Plaintiff does not point to any facts indicating established custom or deliberate indifference on the part of policymakers, either of which could likely be shown at the motion-to-dismiss stage by statistics or reports of similar incidents. Because Plaintiff fails to provide any such facts that could raise her allegations from possible to plausible, her *Monell* claim cannot proceed.

9

Accordingly, it is **ORDERED** that Count XI is **DISMISSED** without prejudice.  Plaintiff is granted leave to amend her complaint to reassert Count XI should facts warranting renewed consideration arise.

**IT IS SO ORDERED.**

BY THE COURT:

 */s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

10